[Sac. No. 5976. In Bank. June 29, 1950.]

CHESTER HARD, Appellant, v. COUNTY OF PLUMAS et al., Respondents.

Gardiner Johnson and Thomas E. Stanton, Jr., for Appellant.

Frank H. McAuliffe, District Attorney, McAllister & Johnson and Walter C. Frame for Respondents.

J. F. Coakley, District Attorney (Alameda), and Richard J. Moore, Deputy District Attorney, Harold W. Kennedy, County Counsel (Los Angeles), Howard Campen, County Counsel (Santa Clara), Robert O. Curran, District Attorney (Mariposa), Louis B. DeMatteis, District Attorney (San

Mateo), Leroy McCormick, County Counsel (Tulare), Charles J. McGoldrick, District Attorney (Sonoma), J. Francis O'Shea, District Attorney (Sacramento), Frederick W. Reyland, Jr., County Counsel (Stanislaus), Richard W. Stevens, District Attorney (San Benito), M. Arthur Waite, District Attorney (Ventura), and William R. MacDougall, Amici Curiae on behalf of Respondents.

CARTER, J.—Plaintiff, a taxpayer and resident of defendant county, sought an injunction restraining defendants from proceeding .with a proposed project consisting of resurfacing a county highway under the supervision of E. G. McLain, the county road commissioner, without calling for bids or letting a contract. The project will cost over $3,000. McLain was appointed by the county board of supervisors to the position of road commissioner and was found by the board to be "qualified and competent" to handle the road work of the county. He is not, however, a registered civil engineer under the laws regulating that vocation. (Bus. and Prof. Code, § 6700 et seq.) Defendants' demurrer to plaintiff's complaint setting forth the foregoing facts was sustained and judgment of dismissal followed.

The controversy arises from plaintiff's assertion that no road work, the cost of which will exceed $3,000, may be done by a county except by contract let to the lowest bidder unless it is done under the supervision of a road commissioner who has qualified as a registered civil engineer under the law of this state.

One of the methods, authorized by the Legislature, under which a county may perform work on its roads is set forth in sections 1070 to 1075 of the Streets and Highways Code. Thereunder the board of supervisors may determine by a four-fifths vote that public convenience requires the work to be done, and that the expense thereof is too great to be met by the funds of the road district where the work is to be done, and, therefore, such work may be done and charged to the district fund, general fund, or general road fund. (Sts. & Hy. Code, § 1070.) When the board finds that the estimated expense of the work exceeds $3,000, surveys, plans, and specifications, etc. for the work shall be made. (*Id.*, § 1071.) Upon receipt of the surveys, etc., the board shall call for bids for the work. (*Id.*, § 1072.) The contract shall be let to the lowest bidder unless the board finds all of the bids too high and that the work can be done more cheaply by "day labor." In that

case, all bids may be rejected and the work done under the supervision of "road commissioners" in whose district the road is situated. (*Id.*, § 1073.) Presumably the road commissioners referred to must now be read to mean a single commissioner for the entire county, inasmuch as a single commissioner system was established in 1947 (Stats. 1947, Ex. Sess. 1947, ch. 11, §§ 1 and 9.2; Sts. & Hy. Code, §§ 1029, 2006.) Apparently the road work here does not come under the provision of section 1073 for it is alleged that the work is to be done without first calling for bids and is pursuant to section 1075. Where the board finds the work can be done for $3,000, or less, it may let a contract therefor without bids or may buy the materials and do the work by day labor. (*Id.*, § 1074.)

Then comes a general provision dealing with letting the work by contract and whether bids must be called for. "In any county employing a competent engineer as road commissioner, the board may have *any work* upon county highways done under the supervision and direction of such engineer. Such work may be done: (a) By letting a contract covering both work and material. In such event the contract shall be let to the lowest responsible bidder as provided in this article. (b) By purchasing the material and letting a contract for the doing of the work. (c) By purchasing the material and having the work done by day labor." (*Id.* § 1075.) [Emphasis added.] It thus plainly appears that the quoted section qualifies the requirements of the previous sections that, under certain conditions, the work must be done under a contract and let to the lowest bidder. Under section 1075, the work, *regardless of its cost*, may be done without letting a contract for all or any part of it, and hence necessarily eliminating the necessity for bids. (*Id.*, § 1075(b), (c).) If, however, it is decided that both labor and materials are to be included in one contract to be let, then there must be a call for bids. (*Id.*, § 1075(a).)

The condition under which the procedure under section 1075 may be followed and thus avoid the requirement of advertising for bids is that the county road commissioner be a "competent engineer." That provision in section 1075 is the same as it was when made a part of the Streets and Highways Code in 1935 (Stats. 1935, ch. 28), and prior thereto. (Pol. Code, § 2640, prior to 1935.) In 1947, the Legislature adopted a new provision stating that counties must employ a single road commissioner for the entire county, and as to his qualifications,

stated that he "shall be a registered civil engineer except that an unregistered person may be employed as road commissioner if approved by the board of supervisors as qualified and competent to handle the road and highway work of the county . . . The county surveyor may be appointed, if a registered civil engineer, or if found by the board of supervisors to be properly qualified . . ." (Sts. & Hy. Code, § 2006; Stats. Ex. Sess. 1947, ch. 11, § 1.) It is upon that new section that plaintiff bases his claim that work cannot be done without a contract let pursuant to a call for bids under section 1075 unless the road commissioner is a registered civil engineer, and the attorney general rendered an opinion to that effect in 1948. (11 Ops. Atty. Gen. 93.) We cannot agree with that contention or opinion.

Section 2006 provides that a road commissioner may be either a registered civil engineer *or* a person *found to be competent by the board of supervisors.* Thus the qualifications of a road commissioner are left to the discretion and determination of the board. One, but only one, absolute test of competency is registration as a civil engineer. Comprehensive regulations are established for the registration or licensing of persons practicing civil engineering. (Bus. & Prof. Code, § 6700 et seq.) Otherwise, the qualifications determined by the board are the test and not those established by the state law, providing for the registration of civil engineers, or its administrators. It is clear, therefore, that the board of supervisors are the arbiters of the competency of the person chosen to act as county road commissioner to handle the road work of the county.

Fitting that conclusion into section 1075, it must mean, together with other factors, that a person who is found competent as road commissioner by the supervisors is also a "competent engineer." It is to be noted that when section 2006 was adopted, section 1075 was not amended to provide for a "registered civil engineer" being selected as road commissioner. The term "competent engineer" was retained, and at the same time section 2006 was adopted, section 1331 was amended and provided that the road commissioner should have charge of bridge construction if a "competent engineer," nothing being said about such road commissioner being a "registered" civil engineer. Furthermore, in the situation where bids have been called for and rejected as "too high," the work may be done under the supervision of a road commissioner (Sts. & Hy. Code, § 1073, *supra*), and certainly such

commissioner need not be a registered civil engineer under section 2006, yet he will be performing precisely the same supervisory engineering work as when the work is done under section 1075. Since county road work is generally done under the supervision of a road commissioner appointed by the board of supervisors (Sts. & Hy. Code, §§ 2006, 2007, 2009), it would seem logical that his competency should be ascertained by the board. It is not to be supposed that in the single instance of work referred to in section 1075, he must be a registered civil engineer and in all others not.

Much stress is laid upon the claim that if nonregistered persons are permitted to supervise the work under section 1075 of the Streets and Highways Code, they will be practicing civil engineering in violation of the state law providing for the licensing of civil engineers (Bus. & Prof. Code, § 6700 et seq.), and thus the statutes should not be construed to permit such persons to do so. There are many answers to that assertion. In addition to the factors heretofore discussed, including the failure of the Legislature to require that road commissioners be registered civil engineers, and in fact particularly refraining from adopting such requirement, it is pertinent that, although the licensing act refers to persons engaged in a public or private capacity, it was adopted prior to section 2006 of the Streets and Highways Code which clearly places in the board of supervisors the power to fix the qualifications of road commissioners. This evinces a clear intent that their qualifications are not those prescribed by the licensing regulations. Indeed, as heretofore seen, if the Legislature intended any such result, they could have said so. Rather, they carefully refrained from going that far. The argument proves too much. If road commissioners for the purpose of section 1075 must be registered civil engineers, then it would mean they would have to be such in all cases. That follows by reason of the broad scope of their duties in road construction and maintenance in addition to those authorized under section 1075. It cannot be supposed that the Legislature in such a devious and uncertain manner intended to require all road commissioners to be registered civil engineers. Indeed, they have declared a contrary intent by vesting in the supervisors the power of determining who is competent for the position of road commissioner without requiring that he be a registered civil engineer. It may well be that the Legislature felt that many rural counties could not obtain the services of

a registered civil engineer at the price they could afford to pay their road commissioner. Certainly it was not intended to single out those counties alone as disqualified to proceed under section 1075, which might be the situation if they were required to select a registered civil engineer as their road commissioner.

The judgment is affirmed.

Gibson, C. J., and Schauer, J., concurred.

SHENK, J.—I concur in the judgment of affirmance and in the reasons on which it is based, with the following additional observations.

Section 1075 of the Streets and Highways Code has been the law of this state since 1921. The statutory requirements for registration and licensing of civil engineers did not appear until 1929. Before 1929 the term "competent engineer" was therefore not used to designate a "registered engineer." After 1929 a registered engineer might well be deemed a competent engineer, but both before and after 1929 an engineer could in fact be a competent engineer and not be registered. The requirement of registration of civil engineers is purely statutory and applies generally to those who desire to practice that profession. Likewise the requirements with reference to the construction of roads and highways are matters of legislative control.

In 1947 the Legislature enacted section 2006 of the Streets and Highways Code. That section provides for the appointment of a single road commissioner in each county and that the road commissioner so appointed be a registered civil engineer, with the specific exception "that an unregistered person may be employed as road commissioner if approved by the board of supervisors as qualified and competent to handle the road and highway work of the county." It is section 6730 of the Business and Professions Code which requires that all who practice or offer to practice civil engineering be registered. This is a general provision. Section 2006 of the Streets and Highways Code as above noted contains the special provision. Under familiar rules of statutory construction the special provision controls the general. Pursuant to the special statute an unregistered person found by the board of supervisors to be qualified and competent to supervise the road and highway work of the county may be employed. The policy and desirability of employing only registered civil engineers in con-

nection with highway construction is for the Legislature and not for the courts to determine. The petitioner does not dispute the qualifications of the road commissioner employed in this case on any ground other than that he is not a registered civil engineer. But when he has been appointed as provided in section 2006 of the Streets and Highways Code he is entitled to act and the registration requirements are not applicable to him.

In this case the District Court of Appeal of the Third Appellate District arrived at the same result in a well considered opinion. (*Hard* v. *County of Plumas*, 210 P.2d 58.)

EDMONDS, J.—Although under section 2006 of the Streets and Highways Code "an unregistered person may be employed as road commissioner if approved by the board of supervisors as qualified and competent to handle the road and highway work of the county," such a person is not "a competent engineer" within the meaning of section 1075 of the same code. To say that an unregistered person employed as a road commissioner has "legal authorization" to practice civil engineering by supervising the building of a highway by day labor seems to be directly contrary to the intention of the Legislature as expressed in the phrase "competent engineer," and to the requirement for the registration of engineers as stated in section 6730 of the Business and Professions Code.

Sections 1070 to 1075 of the Streets and Highways Code provide the method by which a county may perform highway work. When the estimated cost of such work exceeds $3,000, the board of supervisors must direct the preparation of profiles, cross-sections, plans, and specifications (§ 1071); publish notices for sealed bids (§ 1072); publicly open all bids received and award the contract for the work to the lowest responsible bidder, unless the bids are too high and the work can be done more cheaply by day labor (§ 1073). Only if the estimated expense of the proposed project is $3,000 or less may the board of supervisors let a contract for the work without calling for bids, or purchase the materials and do the work by day labor. (§ 1074.)

However, under specified circumstances, section 1075 relaxes the general requirements as to specifications, bids, and contracts for work estimated to cost in excess of $3,000. "In any county employing a competent engineer as road com-

missioner, the board may have any work upon county highways done under the supervision and direction of such engineer. Such work may be done: . . . (c) By purchasing the material and having the work done by day labor.'' (§ 1075.)

At the time of the enactment of the statute which is now section 1075 of the Streets and Highways Code (Stats. 1921, p. 1645), it is obvious that by the use of the term ''competent engineer'' the Legislature required some degree or standard of professional ability. As then in effect, section 2640 of the Political Code contained provisions relating to the method of performing road work which were substantially the same as those of sections 1070 to 1075 of the Streets and Highways Code. The last portion of section 2640, after providing for plans and specifications, calling for bids and letting of contracts, read as follows: ''Provided, however, that in those counties employing a competent engineer as road commissioner, the board of supervisors may have any work to be done upon highways of the county done under the supervision and direction of said engineer, either . . . 3. By purchasing the material and having the work done by day labor. . . .''

Although the terms ''competent engineer'' and ''engineer'' were used by the Legislature in 1921, it did not set up any professional standard for such person until 1929, when a licensing statute was enacted. (Stats. 1929, ch. 801, p. 1645.) After 1930, it became ''. . . unlawful for any person to practice as a civil engineer in this state, unless such person has been duly registered or specifically exempted as required by the provisions of this act.'' (Stats. 1929, ch. 801, § 1, p. 1645.) Since that time, the only person who is entitled to practice civil engineering is one who has received a license from the ''state board of registration for civil engineers.'' The fact that only the designated board may authorize a person to practice civil engineering or any of its branches is emphasized by the 1939 enactment of section 6734 of the Business and Professions Code which provides: ''No one shall represent himself as, or use the title of, registered civil engineer, or any other title whereby such person could be considered as practicing or offering to practice civil engineering in any of its branches, unless he is qualified by registration under this chapter.''

The manifest purpose of the licensing act for civil engineers, now chapter 7 of the Business and Professions Code, is to require that no person may be considered or held out to be such an engineer who has not ''. . . been duly registered as required by the provisions of this chapter or specifically

exempted therefrom.'' (Bus. & Prof. Code, § 6730.) It necessarily follows that, at least since 1929, the appointment of a person as road commissioner does not *ipso facto* give him the status of an ''engineer'' or ''competent engineer'' within the meaning of section 1075 of the Streets and Highways Code.

Any doubt concerning the above conclusion was effectively removed by the enactment of section 2006 of the Streets and Highways Code. By that statute the board of supervisors may appoint as road commissioner either a registered civil engineer or a person qualified and competent to handle the county's road work. But the right to appoint an unregistered person does not mean that by doing so the county may authorize road work to be done by day labor which the statute specifically requires may be performed only under the supervision and direction of a competent engineer. Such a construction of the statute would allow a person who does not have the qualifications entitling him to be registered as a civil engineer, because of his appointment as road commissioner to do those things which are contrary to the public policy of the state.

The Legislature has stated that policy in no uncertain terms. ''In order to safeguard life, health, property and public welfare,'' it declared, ''any person, either in a public or private capacity, . . . [with certain exceptions not here applicable] . . . who practices, or offers to practice civil engineering in any of its branches in this State, shall submit evidence that he is qualified to practice, and shall be registered by the board [of Registration for Civil Engineers].'' (Bus. & Prof. Code, § 6730.) The wide scope of the legislation is found in another section which reads: ''Civil engineering embraces that branch of professional engineering which deals with . . . highways . . . [and] also includes city and regional planning in so far as any of the above features are concerned therein. . . .'' (Bus. & Prof. Code, § 6731.) In addition to these strict requirements, the Legislature declared that every person is guilty of a misdemeanor who ''. . . practices or offers to practice civil engineering in this State according to the provisions of this chapter without legal authorization.'' (Bus. & Prof. Code, § 6787.)

These statutes are all inclusive. They directly negate any intention to give the county boards of supervisors the power to determine the qualifications of a civil engineer for any purpose, or to divest the State Board of Registration for Civil Engineers of its functions. By their terms, only a

county which employs as road commissioner a person who is legally authorized by chapter 7 of the Business and Professions Code to practice civil engineering may construct or repair a county highway by purchasing the material and using day labor if the cost of such work exceeds $3,000, without directing the preparation of plans and specifications and advertising for bids on the project.

For these reasons, I would reverse the judgment.

Traynor, J., and Spence, J., concurred.

Appellant's petition for a rehearing was denied July 27, 1950. Edmonds, J., Traynor, J., and Spence, J., voted for a rehearing.